FILED

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**
**NORTHEASTERN DIVISION**

97 NOV 26 PM 3:17

U.S. DISTRICT COURT
N.D. OF ALABAMA

BOBBY ALLEN JOHNSON,   )
                       )
       Plaintiff,      )
                       )
vs.                    )   Civil Action No. CV-95-S-3022-NE
                       )
ONEITA INDUSTRIES, INC.;   )
ONEITA INDUSTRIES, CULLMAN;   )
and DARLENE ABSHER, both   )
individually and as agent of   )
Defendants Oneita Industries,   )
Inc. and Oneita Industries,   )
Cullman,               )
                       )
       Defendants.     )
                       )

ENTERED

NOV 2 6 1997

## MEMORANDUM OPINION

This action was tried to a jury during August of 1997. Bobby
Allen Johnson presented a claim of retaliation in violation of
Title VII of the Civil Rights Act of 1964 against the Oneita
defendants, and, two state law claims for invasion of privacy and
assault and battery against defendant Darlene Absher.[1] The jury
found in favor of Johnson on the retaliation claim and awarded him
$15,000.00 in compensatory damages and $5,000.00 in punitive
damages. Additionally, the jury found in favor of Johnson on his
claim of assault and battery, and awarded him damages against
defendant Darlene Absher in the nominal amount of $10.00. Finally,
the jury found in favor of defendant Absher on plaintiff's claim of
invasion of privacy. This court entered a judgment in accordance
with the jury's verdict on August 8, 1997.

---

[1] The pretrial order entered August 22, 1996 eliminated several state law
claims asserted against the Oneita defendants and a claim for intentional
infliction of emotional distress against defendant Absher. By order of March 13,
1997, the court entered summary judgment in favor of the Oneita defendants on
plaintiff's Title VII claim for hostile work environment and his state law claim
for negligent training and supervision.

The action now is before the court on several post-trial motions:   *i.e.*, (1) plaintiff's application for an award of attorneys' fees; (2) plaintiff's motion for equitable relief; and (3) defendants' motion to strike plaintiff's reply to defendants' response to plaintiff's fee application and the amended affidavit of Marion F. Walker.

## I.   PLAINTIFF'S APPLICATION FOR ATTORNEYS' FEES

Plaintiff seeks an award of attorneys' fees in the amount of $56,129.50, and reimbursement of expenses in the amount of $3,738.57, pursuant to 42 U.S.C. § 2000e-5(k).[2]  *See Evans v. Jeff D.*, 475 U.S. 717, 106 S. Ct. 1531, 89 L. Ed. 2d 747 (1986) (right to recover fees belongs to the party, not the attorney).  Section 2000e-5(k) grants discretion to the court in Title VII actions to "allow the prevailing party ... a reasonable attorney's fee ... as part of the costs...."  42 U.S.C. § 2000e-5(k).  A prevailing party is one who succeeds "on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit."  *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983); *see also*, *e.g.*, *Farrar v. Hobby*, 506 U.S. 103, 111, 113 S. Ct. 566, 573, 121 L. Ed. 2d 494 (1992) ("[T]o qualify as a prevailing party,  ...  [w]hatever relief the plaintiff secures must directly benefit him at the time of the judgment or

---

[2] Plaintiff actually claims attorneys' fees pursuant to 42 U.S.C. § 1988, which permits such an award in actions brought under "sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92-318 [20 U.S.C. § 1681 *et seq.*], the Religious Freedom Restoration Act of 1993 [42 U.S.C. § 2000bb *et seq.*], title VI of the Civil Rights Act of 1964 [42 U.S.C. § 2000d *et seq.*], or section 13981 of this title...."  42 U.S.C. § 1988(b).  Plaintiff has not presented a claim under any section referenced in that statute.  Nevertheless, 42 U.S.C. § 2000e-5(k), as amended by the Civil Rights Act of 1991, provides for the same result in Title VII actions.  *See* Walker v. Anderson Elec. Contractors, 944 F.2d 841, 846 n.10 (11th Cir. 1991) ("Congress intended the standards for awarding fees under these two statutes to be the same.") (citations omitted).

settlement"). Johnson is a prevailing party in this action as to some, but not all, of his claims. "[W]here the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained." *Hensley,* 461 U.S. at 440, 103 S. Ct. at 1943.

## A.    Attorneys' Fees

Plaintiff's request for fees and expenses may be itemized as follows:

|  | Hours | Hourly Fee | Total |
|---|---|---|---|
| Marion F. Walker | 145.00 | $250.00 | $36,250.00 |
| William D. Sulzby, Jr.[3] | 53.00 | $150.00 | $7,950.00 |
| Janet R. Varnell | 83.95 | $110.00 | $9,234.50 |
| Law Clerks | 66.70 | $25.00 | $1,667.50 |
| Paralegal | 34.25 | $30.00 | $1,027.50 |
| Expenses | N/A | N/A | $3,738.57[4] |
|  |  | TOTAL | $59,868.07 |

The Eleventh Circuit defined the method for determining an award of attorneys' fees in *Norman v. Housing Authority of City of Montgomery,* 836 F.2d 1292 (11th Cir. 1988). The district court must multiply the number of hours reasonably expended by a reasonable hourly rate to arrive at an amount called the "lodestar." *Norman,* 836 F.2d 1292 at 1299. The party applying for attorneys' fees is responsible for submitting satisfactory evidence to establish both that the requested hourly rate is in accord with

---

[3] William Sulzby filed plaintiff's EEOC charge and complaint. Subsequent to those filings, Marion F. Walker entered a notice of appearance on plaintiff's behalf (March 20, 1996). Thereafter, Sulzby filed a motion to withdraw as counsel, which was granted on July 10, 1996.

[4] Walker claims expenses of $3,558.07; Sulzby claims expenses of $180.50.

3

prevailing market rates, and, that the number of hours expended by the attorney in the prosecution of plaintiff's claims are reasonable. *Norman*, 836 F.2d at 1303. The district court then must determine whether any portion of the lodestar should be adjusted upwards or downwards. *Hensley*, 461 U.S. at 433-34, 103 S. Ct. at 1939-40. The court is guided in that process by twelve factors set out in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974).[5]   Those factors are:   (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of professional relationship with the client; and, (12) awards in similar cases.

### 1.   Reasonable Hourly Rate

The first step in calculating the "lodestar" is to ascertain a reasonable hourly rate for plaintiff's attorneys. "A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman*, 836 F.2d at 1299 (citing *Blum v. Stenson*, 465 U.S. 886, 896 n.11, 104 S. Ct. 1541,

---

[5] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

4

1547, n.11, 79 L. Ed. 2d 891 (1984)). The "rate of attorney's fees is that of the place where the case is filed." *Cullens v. Georgia Department of Transportation*, 29 F.3d 1489, 1494 (11th Cir. 1994). Plaintiff filed this action in the Circuit Court for the 32nd Judicial Circuit of Alabama (Cullman County), but defendants removed it to this court.[6] Therefore, the Northeastern Division of the Northern District of Alabama is the "relevant legal community." *See Ross v. Buckeye Cellulose Corporation*, 764 F. Supp. 1543 (M.D. Ga. 1991); *In Re Barger*, 180 B.R. 326 (S.D. Ga. 1995). Neither party argues that the relevant legal market is limited to the Northeastern Division, however. Accordingly, for all attorneys except William D. Sulzby, for whom Cullman County is deemed the relevant market, this court treats the Northern District of Alabama as the relevant legal community. *Lattimore v. Oman Construction*, 714 F. Supp. 1178, 1179 (N.D. Ala. 1988) ("The relevant market for legal services is the Northern District of Alabama, consisting of the thirty-one northernmost counties of the state"), *aff'd*, 868 F.2d 437 (11th Cir. 1989).

The movant bears the burden of producing satisfactory evidence that the requested rate is in line with prevailing market rates, and may meet this burden by producing either direct evidence of rates charged under similar circumstances, or opinion evidence[7] of reasonable rates. *Norman*, 836 F.2d at 1299. The court also may consider the *Johnson* factors "to the extent that they suggest that

---

[6] Defendants filed a notice of removal on November 21, 1995.

[7] "The weight to be given to opinion evidence of course will be affected by the detail contained in the testimony on matters such as similarity of skill, reputation, experience, similarity of case and client, and breadth of the sample of which the expert has knowledge." *Norman*, 836 F.2d at 1301.

5

comparables offered may not be relevant to the issues before the court or as they may affect the weight to be given to the comparables being offered the court." *Id.* at 1299-1300.

The court seldom is presented one figure as a prevailing market rate. Normally, the movant asks for rates approximating the highest charged in the community, whereas the non-movant generally submits evidence of the lowest rate charged in any part of the community. *Id.* at 1300. The prevailing market rate cannot be set at a precise figure, because it is fluid: moving in synchrony with the tides and currents of competition.

Plaintiff presents the affidavit of Marion Walker, his lead counsel, attesting to her experience and customary fee. Satisfactory evidence requires more than just the affidavit of the attorney performing the work for which compensation is sought, however. *Blum*, 465 U.S. at 896 n.11, 104 S. Ct. at 1547 n.11. Thus, plaintiff also tenders the affidavits of experienced Birmingham civil rights attorneys C. Michael Quinn and Joe Whatley, Jr., who aver that, based on the prevailing market rate in Birmingham for attorneys with similar skill and experience, Walker and her associate are entitled to the fees sought. Defendants also present affidavits of two experienced Birmingham attorneys who aver that a reasonable rate for an attorney of Ms. Walker's skill and experience would be lower than their own regular rates of $200 and $210 per hour for cases of this type.[8] The prevailing market rate in Birmingham alone, however, is not determinative here. It is the

[8] Defendants' expert, C. A. Powell, III, states that the rates sought for Varnell and Walker's paralegal are reasonable. *See* Declaration of C. A. Powell, III, Relating to Attorneys Fees at 3.

6

prevailing market rate which prevails throughout the entire Northern District which this court must ascertain.

Plaintiff presents affidavits from two Cullman attorneys which reflect that prevailing rates in that community are somewhat lower than those in Birmingham.  The affidavit of Johnny V. Berry, however, is not helpful.  Berry asserts no more than that he knows Sulzby as a member of the local bar who previously worked for twenty years in the field of human relations.  Berry offers the court no insight into the prevailing market rates for an attorney handling civil rights litigation in Cullman or elsewhere in the Northern District.  The affidavit of Cullman attorney Tommy Drake instructs the court that "[t]he going rate for attorneys in this community for a case of this nature, considering the experience of Mr. Sulzby, generally ranges from One Hundred ($100.00) Dollars to Two Hundred ($200.00) per hour." (Plaintiff's Application, Exhibit H.)  Drake's statement is devoid of significant detail and, standing alone, is insufficient to establish the reasonable hourly rate appropriate for this case.  Yet, coupled with evidence of the prevailing rates for attorneys in Birmingham, Drake's opinion provides the court with a range of fees appropriate for the Northern District of Alabama. To that broad range, the court adds its own experience to arrive at a reasonable hourly rate for the attorneys in this case.[9]

Undoubtedly the most important factor in determining a lawyer's reasonable fee, and one cited in *Johnson*, is the skill of

---

[9] Where "affidavits submitted in support of the fee application and the affidavits submitted in opposition thereto are by and large inadequate, ... the district court ... must rely on its own expertise in determining a reasonable hourly rate." *Norman*, 836 F.2d at 1304.

7

the attorneys involved.  The court in *Norman* suggests that "skill" incorporates the notions of organization,[10] efficiency,[11] knowledge,[12] and persuasiveness.

> Once a district court has winnowed down the comparables offered by the parties to those which are relevant to the facts and circumstances of the case, the client, and the attorney before it, this court would still expect that there might be a range in prevailing market rates.  That range is accounted for almost always by experience, skill and reputation.  A closer analysis suggests that reputation and experience are usually only proxies for skill, which in a rational economic environment is the ultimate determinant of compensation level.

*Norman*, 836 F.2d at 1300.  A district court judge, having observed the trial of a case, may appropriately make her or his own determination of a particular advocate's skill level in setting a reasonable fee for that attorney.[13]   When making such an observational evaluation, this court recognizes that, sometimes, the outcome of a case turns less on the strength of the facts than on a lawyer's skill in presenting those facts.

> Some clients prevail only because of the compelling merit of their case and in spite of their attorney's efforts to communicate a position.  In other cases, usually close ones, the better advocate may actually sway the outcome on occasion.  In the usual case, both the merits and the advocacy control the outcome.  The measure of good advocacy is that the client's best positions are advanced clearly, crisply and compellingly.

---

[10] "Organization means that discovery devices and motions are thought out and not utilized in a random and erratic way or for the mere purpose of going through established routines."  *Norman*, 836 F.2d at 1301.

[11] "Efficiency means doing well just what ought to be done and doing it in a minimum of time."  *Norman*, 836 F.2d at 1301.

[12] Knowledge entails "knowledge of trial practice and knowledge of substantive law."  *Norman*, 836 F.2d at 1301.

[13] *See Norman*, 836 F.2d at 1303 ("The court, either trial or appellate, is itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value.").

*Id.* at 1301. Marion Walker is an able advocate who advanced her client's best positions in such a manner. Since her admission to the Bar in 1976, Ms. Walker has had extensive experience in civil rights litigation, prosecuting twenty such cases before a jury to verdict. Accordingly, Walker is due an hourly rate at the high end of the prevailing range. That determination warrants a rate for Walker in the amount she claims: $250.00 an hour.[14]

With regard to Sulzby, the court did not have an opportunity to view his skills. Sulzby's affidavit states that he was admitted to the bar in 1991. Before then, he worked for twenty years as director of industrial relations for Hayes International Corporation, in which position he was responsible for handling complaints of sexual harassment and discrimination. Although Sulzby claims that such experience prepared him to represent plaintiffs in civil rights cases such as Johnson's, he presents no evidence that he has handled such a case before. Certainly, in this instance, he properly identified that Johnson had a valid cause of action and filed an appropriate complaint. Yet, significantly, most of the claims asserted in the complaint drafted by Sulzby were dismissed prior to trial.

Additionally, the *Johnson* factors do not mitigate in Sulzby's favor: he expended few hours on the case at an early stage of the

---

[14] The court notes that C. A. Powell, III, who submitted an affidavit on defendants' behalf, opined that a reasonable hourly rate for someone of Ms. Walker's experience and skill would be $175 to $185 per hour; Powell charges $210 per hour for such work. *See* Declaration of C. A. Powell, III, Relating to Attorneys Fees at 3. Defendants' other expert, David J. Middlebrooks, charges $200 per hour for such cases. *See* Affidavit of David J. Middlebrooks at 2. This court does not lightly reject the opinion of such eminent attorneys, but neither lawyer observed Ms. Walker artfully weave a silk purse from the meager material of a boar's ear.

9

litigation; his limited involvement in the case provides no reliable evidence of his skill level and imposed slight burdens on his ability to handle other matters simultaneously; and his involvement appears to have contributed very little to the actual outcome of the case.  Moreover, the affidavit submitted by Drake on Sulzby's behalf placed Sulzby in the bottom half of the wage range prevailing in Cullman.  Accordingly, the court finds that Sulzby is entitled to an hourly rate of $100 for his work on Johnson's behalf.

Plaintiff seeks an hourly rate of $110 for the work of Walker's associate, Janet Varnell.  Although no evidence of the prevailing scale for a first year associate in the Northern District of Alabama is presented by plaintiff, C. A. Powell's affidavit for defendants states that the requested fee is reasonable.  The court presumes such may be true in Birmingham, but questions whether first year lawyers throughout the Northern District merit such a price tag.  Indeed, Drake's affidavit states that Cullman lawyers with six years of experience (Sulzby's experience level) earn between $100 and $200 an hour for civil rights cases.  Logically, first year associates should entail a lower tariff, especially when the professional services rendered by that associate were, as in this case, limited.[15]  Accordingly, the court finds a fee of $85 an hour for Varnell's work on plaintiff's case to be the appropriate measure.

In *Missouri v. Jenkins*, 491 U.S. 274, 282-284, 109 S. Ct. 2463 2469-72 (1989), the Supreme Court ruled that the work of

---

[15] Varnell left Walker's employ during the pretrial phase of this case. Her motion to withdraw was granted on December 30, 1996.

paralegals, law clerks, and other paraprofessionals is compensable, whether at market rate or at cost, as such services are compensated generally in the relevant legal community.  This court finds the rate requested for paralegal work, at $30 per hour, and the rate for the work of a law clerk, at $25 per hour, to be reasonable.[16]

### 2.  Hours Reasonably Expended

The  second  step  in  computing  the  lodestar  requires  a determination of the number of hours reasonably expended by counsel.  Attorneys are required to exercise "billing judgment." *Hensley*, 461 U.S. at 437, 103 S. Ct. at 1941.

> "[B]illing judgment" means that a lawyer may not be compensated for hours spent on activities for which he would not bill a client of means who was seriously intent on vindicating similar rights, recognizing that in the private sector the economically rational person engages in some cost benefit analysis.

*Norman*, 836 F.2d at 1301.  The court also is charged with redacting redundant hours.   *Id.*   "[E]xcessive,  redundant,  or  otherwise unnecessary" hours should be excluded from the amount claimed. *Hensley*, 461 U.S. at 434, 103 S. Ct. at 1939-40.   Nevertheless, "[t]here is nothing inherently unreasonable about a client having multiple attorneys, and they may all be compensated if they are not unreasonably doing the same work and are being compensated for the distinct contribution of each lawyer." *Norman*, 836 F.2d at 1302 (citing *Johnson v. University College of University of Alabama in Birmingham*, 706 F.2d 1205, 1208 (11th Cir.), *cert. denied*, 464 U.S. 994,  104 S.  Ct.  489  (1983)).   Finally,  the district court  may deduct time spent on discrete and unsuccessful claims.  *Hensley*, 461 U.S. at 435, 103 S. Ct. at 1940.  However, such reductions, if

---

[16] *See* Declaration of C. A. Powell, III, Relating to Attorneys Fees at 3.

11

warranted at all, are more appropriately considered after the court ascertains the lodestar. *See id*, 461 U.S. at 436-37, 103 S. Ct. at 1941 (explicitly stating that a court could simply reduce the award to account for the plaintiff's limited success instead of eliminating hours specifically expended on unsuccessful claims); *accord Popham v. City of Kennessaw*, 820 F.2d 1570, 1581 (11th Cir. 1987). The Eleventh Circuit holds that "[i]f the court disallows hours it must explain which hours are disallowed and show why an award of these hours would be improper." *Norman* 836 F.2d at 1304 (citations omitted). Thus, this court proceeds with a review of the reasonableness of the hours claimed, considering whether any are excessive, redundant, or otherwise unnecessary.

### a)   Marion F. Walker

Plaintiff requests 145 hours for the work of Marion Walker. Of those, none appear duplicative of work performed by others. None appear unnecessary or excessive.[17]   Instead, the time expended reflects thoroughness and diligence.   Thus, this court concludes that plaintiff's request for compensation for 145 hours of work by Walker is reasonable.

### b)   William D. Sulzby, Jr.

Plaintiff seeks recovery for 53 hours of work performed by Sulzby before his withdrawal from the case.   A review of Sulzby's time records indicates that he spent an inordinate amount of time drafting plaintiff's EEOC charge and complaint: more than 30

---

[17] Defendants' experts offer no opinions on the reasonableness of the hours sought by plaintiff. In brief, defendants assert that a few of the claimed hours are duplicative or improperly billed, but the court finds those arguments without merit.

hours.[18] Those hours reflect a lack of familiarity with employment discrimination claims.    While Sulzby is to be commended for conscientiousness, defendants are not obligated to pay for educating an inexperienced lawyer. As previously noted, most of the claims asserted by Sulzby in the complaint he drafted were dismissed before trial. Moreover, Sulzby did not attend the trial, nor did he provide any significant assistance to Walker in preparing for trial. Accordingly, the court finds it appropriate to reduce Sulzby's compensable hours by half, to 26.5 hours.

### c)    Janet R. Varnell

Plaintiff seeks compensation for 83.95 hours of work performed by Ms. Varnell, Walker's associate. Again, the court discerns no duplication or unnecessary hours from the time records submitted. The records reveal that Varnell assisted Walker with pretrial discovery, researching law, and organizing exhibits and witnesses for trial. Accordingly, this court finds the time spent by Varnell reasonable.

### d)    Paralegal and Law Clerks

Plaintiff seeks fees for 34.25 hours of work  by a paralegal, and 66.7 hours of work by law clerks.  The court notes that Walker's law clerks and paralegal performed more than thirty percent of all hours worked on plaintiff's case, at hourly rates significantly lower than Walker's, Varnell's, or Sulzby's.  Those hours are reasonable. Accordingly, this court finds plaintiff is entitled to recover for those hours.

---

[18] A precise total for this work cannot be discerned because some of Sulzby's time records reflect multiple entries for a single block of time. *See* Plaintiff's Application for Award of Attorney Fees, Exhibit F.

## LODESTAR COMPUTATION

|  | Reasonable Hours | Reasonable Fee | Total |
|---|---|---|---|
| Marion F. Walker | 145.00 | $250.00 | $36,250.00 |
| William D. Sulzby | 26.50 | $100.00 | $2,650.00 |
| Janet R. Varnell | 83.95 | $85.00 | $7,135.75 |
| Law Clerks | 66.70 | $25.00 | $1,667.50 |
| Paralegal | 34.25 | $30.00 | $1,027.50 |
|  |  | TOTAL LODESTAR | $48,730.75 |

### 3.   Adjustments to the Lodestar

After determining the lodestar amount, the court should adjust
the final fees awarded to reflect the results obtained through
litigation. *Hensley*, 416 U.S. at 434, 103 S. Ct. at 1939-40. The
Eleventh Circuit provides the following guidance:

> If the result was excellent, then the court should
> compensate for all hours reasonably expended.  ...  If
> the result was partial or limited success, then the
> lodestar must be reduced to an amount that is not
> excessive.  ...  In doing so, the court may attempt to
> identify specific hours spent in unsuccessful claims or
> it may simply reduce the award by some portion.  ...  A
> reduction is appropriate if the relief, however
> significant, is limited in comparison to the scope of the
> litigation as a whole.  ...  Where all theories derive
> from a common core of operative facts, the focus should
> be on the significance of overall results as a function
> of total reasonable hours.  ...  It is improper to make
> the reduction based on a simple ratio of successful
> issues to issues raised....  The vindication of a
> constitutional right is important even if only a small
> amount of money is involved.

*Norman*, 836 F.2d at 1301 (citations omitted).  Defendants urge a
reduction based on plaintiff's failure on a majority of his claims.
Yet, the court understands that in many civil rights cases,

> issues are overlapping and intertwined.  In order to
> represent their clients adequately, attorneys must
> explore fully every aspect of the case, develop all of

14

the evidence and present it to the court. Time spent
pursuing unsuccessful claims that were clearly without
merit should be excluded. However, the mere fact that
the litigants did not succeed in obtaining a judgment on
all of the claims asserted does not mean that time spent
pursuing these claims should automatically be disallowed.
Instead the court must consider the relationship of the
claims that resulted in judgment with the claims that
were rejected and the contribution, if any, made to
success by the investigation and prosecution of the
entire case.

*Jones v. Diamond*, 636 F.2d 1364, 1382 (5th Cir. 1981). Recognizing

those considerations, the Supreme Court has instructed that, in

some civil rights cases,

the plaintiff's claims for relief will involve a common
core of facts or will be based on related legal theories.
Much of counsel's time will be devoted generally to the
litigation as a whole, making it difficult to divide the
hours expended on a claim-by-claim basis. Such a lawsuit
cannot be viewed as a series of discrete claims. Instead
the district court should focus on the significance of
the overall relief obtained by the plaintiff in relation
to the hours reasonably expended on the litigation.

*Hensley*, 461 U.S. at 435 (citations omitted). In the present case,

plaintiff has not identified which hours and expenses were incurred

for each claim. Nor is the court convinced such an hour-by-hour

review is possible in view of the fact that all claims "derive[d]

from a common core of operative facts." Consequently, this court

declines to dissect the interlocking evidence and consider it in

isolation as supporting only one claim or the other.

The adjustment of attorneys' fees is within the discretion of

the district court, in any event. *Norman*, 836 F.2d at 1304. The

amount of recovery already has been reduced to reflect prevailing

hourly rates in Cullman, and to eliminate excessive hours by

plaintiff's initial attorney. This court also is of the opinion

that plaintiff's result on his retaliation claim "was excellent."

15

Johnson has vindicated an important right. The court accordingly concludes that a downward adjustment in the lodestar is unwarranted.

The court now must determine whether an upward adjustment is warranted. Even if the results obtained are exceptional, no enhancement is permissible, unless there is specific evidence in the record to show that the quality of representation was superior to that which one would reasonably expect in light of the rates claimed. *Blum*, 465 U.S. at 899, 104 S. Ct. at 1549. In the rare case, enhancement may be appropriate where there is a risk of non-recovery of a fee in the case, if it is shown that such enhancement is necessary to assure the availability of counsel. *See Pennsylvania v. Delaware Valley Citizens' Council*, 483 U.S. 711, 734, 107 S. Ct. 3078, 3091, 92 L. Ed. 2d 439 (1986) (O'Connor, J., concurring). Finally, the court must consider the issue of delay in the receipt of payment by counsel for the prevailing party. "[W]here there is a delay the court should take into account the time value of money and the effects of inflation and generally award compensation at current rates rather than at historic rates." *Norman*, 836 F.2d at 1302 (citing *Gaines v. Dougherty County Board of Education*, 775 F.2d 1565, 1572 n.14 (11th Cir. 1985)).

Upon consideration of the foregoing factors, this court concludes that neither an upward nor downward adjustment of the lodestar is warranted. Accordingly, plaintiff is entitled to recover $48,730.75 for attorneys' fees.

16

**B.   Costs**

The Eleventh Circuit has noted that "the factually complex and protracted nature of civil rights litigation frequently makes it necessary to make sizeable out-of-pocket expenditures which may be as essential to success as the intellectual skills of the attorney." *Dowdell*, 698 F.2d at 1190. Accordingly, the court went on to hold that

> with the exception of routine office overhead normally absorbed by the practicing attorney, all reasonable expenses incurred in case preparation, during the course of litigation, or as an aspect of settlement of the case may be taxed as costs.   ...   [T]he standard of reasonableness is to be given a liberal interpretation.

*Dowdell*, 698 F.2d at 1192 (citations omitted).

Plaintiff requests reimbursement for expenses in the amount of $3,738.57.   This court has examined the itemization of expenses related to that request and determines that the amount is entirely reasonable.   Johnson already recovered $2,641.23 of those costs pursuant to the Bill of Costs entered by this court on October 21, 1997.  Accordingly, this court reduces plaintiff's request by that same amount.   Johnson may recover an additional $1,097.34 in expenses.

### III.   DEFENDANTS' MOTION TO STRIKE

Plaintiff filed a reply brief to defendants' response to plaintiff's fee application.  Together with that reply, plaintiff filed an amended affidavit of Marion Walker in which she supplements her original fee application with additional hours. Such a filing was not directed by the court, nor did plaintiff seek leave of court to permit a reply.  The court ordered plaintiff to

17

file all supporting documentation with his fee application within ten days of the entry of judgment in this case. Accordingly, plaintiff's additional submissions after that deadline will not be considered by the court. Defendants' motion is due to be granted.

### IV. PLAINTIFF'S MOTION FOR EQUITABLE RELIEF

Judgment was entered upon the jury verdict in favor of plaintiff in the amount of $20,000, plus costs, on August 8, 1997. Plaintiff moved this court to grant equitable relief in the form of reinstatement on September 18, 1997. Plaintiff's motion does not cite any rule as a basis for the relief requested, although the motion appears to invoke Federal Rule of Civil Procedure 59(e), which requires that motions to amend or alter a judgment be filed within 10 days after entry of the judgment. If so construed, plaintiff's motion is untimely, and this court is without jurisdiction to consider the motion. *Glass v. Seaboard Coast Line Railroad Company*, 714 F.2d 1107, 1109 (11th Cir. 1983) (Rule 59's "10-day period is jurisdictional, and cannot be extended in the discretion of the district court") (citations omitted).

Alternatively, the motion could be construed as a Rule 60(b) motion for relief from judgment, which contains no similar time limit. *See* Fed. R. Civ. P. 60(b) ("The motion shall be made within a reasonable time ... after the judgment ... was entered"); *Nisson v. Lundy*, 975 F.2d 802, 806 (11th Cir. 1992) (unstyled motions which would otherwise be untimely "may, however, be treated as Rule 60(b) motions if grounds stated would be a basis for Rule 60(b) relief").

18

The Supreme Court has stated that Rule 59 is properly invoked "only to support reconsideration of matters properly encompassed in a decision on the merits." *White v. New Hampshire*, 455 U.S. 445, 450-51, 102 S. Ct. 1162, 1165-66, 71 L. Ed. 2d 325, 330-31 (1982). The Court further suggested that Rule 59 motions typically relate to compensation for the injury giving rise to an action rather than matters "uniquely separable from the cause of action to be proved at trial." *White*, 455 U.S. at 451, 102 S. Ct. at 1166. Similarly, the Eleventh Circuit has held that "Rule 59(e) applies only when a motion seeks reconsideration of substantive issues resolved in the judgment and not when a motion raises exclusively collateral questions regarding what is due because of the judgment." *Osterneck v. E. T. Barwick Industries*, 825 F.2d 1521, 1526 (11th Cir. 1987), *aff'd sub nom. Osterneck v. Ernst & Whinney*, 489 U.S. 169, 109 S. Ct. 987, 103 L. Ed. 2d 146 (1989). Thus, a timely Rule 59 motion urges a court to "reconsider its holdings of law and fact to determine whether its judgment was correct." *Gordon v. Heimann*, 715 F.2d 531, 538 (11th Cir. 1983).

Rule 60(b), on the other hand, is to be given a liberal and remedial construction in order to do "substantial justice." *United States v. Real Property & Residence*, 920 F.2d 788, 792 (11th Cir. 1991). Rule 60(b)(6), the "catch-all" provision, allows motions based on any reason justifying relief" not included in the preceding clauses of the rule. *See* Fed. R. Civ. P. 60(b)(6). Yet, that provision

> is reserved for instances of genuine injustice, and does not permit a party or a judge to circumvent the clear commands of Rules 6(b) and 59(e). Rule 6(b) forbids a

19

> court to enlarge the time within which a Rule 59(e)
> motion may be served; condoning the trial court's use of
> Rule 60(b)(6) would serve to undermine finality ... and
> defeat the ends of Rules 6(b) and 59(e).

*Hertz Corporation v. Alamo Rent-A-Car, Inc.*, 16 F.3d 1126, 1128
(11th Cir. 1994).

Plaintiff's motion directs this court to neither Rule 59 nor
Rule 60.  The motion sets forth no explanation for plaintiff's
apparent delay in filing the motion.  The motion asserts, as
grounds for relief, the jury verdict and plaintiff's prayer for
relief in the complaint, which sought "such other, further
different relief as this Court may seem [sic] just and proper."
(Complaint ¶ 36.)  Yet, neither the complaint nor the pretrial
order references reinstatement or any other equitable relief.
Plaintiff's motion asks this court to reopen a matter which clearly
relates to the compensation due for his injury, and which is
properly encompassed in the prior decision on the merits.  That
decision became final on August 8, 1997.  Accordingly, plaintiff's
motion is untimely and this court has no jurisdiction to consider
it.

Alternatively, even if the court treats the motion as a Rule
60(b) motion for relief from judgment, the court finds that
plaintiff is not entitled to reinstatement.  Title VII instructs
that "the court may enjoin the respondent from engaging in such
unlawful employment practice, and order such affirmative action as
may be appropriate, which may include reinstatement...." 42 U.S.C.
§ 2000e-5(g).  Notwithstanding this discretionary language,
reinstatement of the prevailing plaintiff in wrongful termination

20

cases is generally required, absent exceptional circumstances. *Allen v. Autauga County Board of Education*, 685 F.2d 1302, 1305 (11th Cir. 1982) ("[R]einstatement is a basic element of the appropriate remedy in wrongful employee discharge cases and, except in extraordinary cases, is required") (citations omitted). The court finds, however, that exceptional circumstances exist in this case which preclude plaintiff's reinstatement.

Since the date of plaintiff's termination, Oneita has undertaken a subsequent reduction in force which eliminated plaintiff's former position entirely. Although Oneita's retaliation is not justified by the fact that other events later occurred to permit the subsequent elimination of plaintiff's job, such a circumstance "might provide a basis for denying the remedy of reinstatement." *Sagendorf-Teal v. County of Rensselaer*, 100 F.3d 270, 275 (2nd Cir. 1996) (citing *McKennon v. Nashville Banner Publishing Co.*, 513 U.S. 352, 360, 115 S. Ct. 879, 886, 130 L. Ed. 2d 852 (1995). Logically, if plaintiff's former position no longer exists, he cannot be reinstated. Accordingly, this case presents an exceptional circumstance which precludes the remedy of reinstatement. Thus, even if this court considers plaintiff's motion under Rule 60, such motion is due to be denied.

An order consistent with this memorandum opinion will be entered contemporaneously herewith.

DONE this 26th day of November, 1997.

United States District Judge

21